(86 South. 132)

MONTGOMERY v. STATE. (8 Div. 745.)*

(Court of Appeals of Alabama. April 13, 1920. On Rehearing, June 8, 1920.)

1. HOMICIDE ☞163(2)—SPECIFIC ACTS NOT ADMISSIBLE TO ESTABLISH CHARACTER OF DECEASED.

In murder prosecution, testimony of sheriff that deceased at the time of his death was a fugitive from justice, and on a former occasion attempted to shoot sheriff while the sheriff was trying to arrest deceased, *held* inadmissible for the purpose of showing the violent, turbulent, and bloodthirsty character of the deceased, since proof of specific acts or isolated facts cannot be shown to establish character.

2. HOMICIDE ☞188(3)—THAT DECEASED WAS OF VIOLENT CHARACTER INADMISSIBLE, EXCEPT ON ISSUE OF SELF-DEFENSE.

In a homicide prosecution, where there was no evidence that defendant had acted in self-defense, testimony that deceased was a person of violent, turbulent, and bloodthirsty character was inadmissible.

3. CRIMINAL LAW ☞517(2)—ADMISSION OF CONFESSIONS IN HOMICIDE CASE, ON LAYING OF PROPER PREDICATE, NOT ERROR.

Admission of testimony as to defendant's confessions, made a short time after the killing, where a proper predicate had been laid therefor, *held* not error.

4. WITNESSES ☞287(4)—REDIRECT EXAMINATION AS TO WHOLE CONVERSATION PROPER, WHERE WITNESS CROSS-EXAMINED AS TO PART.

Where a witness was cross-examined as to a part of a conversation, it was proper to inquire as to the whole of such conversation on redirect examination.

5. HOMICIDE ☞142(5) — VARIANCE BETWEEN INDICTMENT AND PROOF AS TO NAME OF DECEASED HELD NOT FATAL.

Variance between indictment, charging that defendant killed "Red Nelson," and proof showing that the name of deceased was "William Phillips" or "Webster Nelson,". was not fatal, where all the witnesses in their testimony referred to deceased as "Red Nelson," and the undisputed evidence showed that deceased was commonly known and always called by such name.

6. CRIMINAL LAW ☞364(4)—HOMICIDE ☞174(1)—THAT DEFENDANT THREW DECEASED'S BODY OVER BLUFF TO CONCEAL IT HELD INADMISSIBLE AS RES GESTÆ, BUT ADMISSIBLE AS ACT AGAINST INTEREST.

In murder prosecution, testimony that within an hour or an hour and a half after the killing defendant together with two others, carried the body a distance of half or three-quarters of a mile, and threw it over a bluff into a sink in the mountains, and thereby concealed it, was not competent as part of res gestæ, but was admissible on the theory that the acts, declarations, and conduct of accused against interest are always admissible.

7. HOMICIDE ☞174(1) — THAT DEFENDANT THREW DECEASED'S BODY INTO MOUNTAIN SINK HELD ADMISSIBLE.

In a murder prosecution, where there was evidence that defendant committed the crime, testimony that defendant within an hour and a half after the killing helped to throw deceased's body into a sink in the mountains, and thereby concealed it, was competent as evidence showing a desire or disposition on the part of the defendant to conceal the crime.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Certiorari denied by Supreme Court 204 Ala. 389, 85 South. 785.

**8. CRIMINAL LAW ☞351(10)—EFFORT OF DEFENDANT TO OBLITERATE EVIDENCE OF CRIME ADMISSIBLE.**

Any act proving or tending to prove an effort or desire on the part of the defendant to obliterate evidence of a crime is relevant, for from such facts, if unexplained, the jury may justly infer a consciousness of guilt; the admissibility of such evidence not depending on its contemporaneousness in connection with the crime that is charged, or upon its being a part of the res gestæ.

**9. CRIMINAL LAW ☞351(1)—WHEN CONDUCT AND LANGUAGE ADMISSIBLE AS SHOWING CONSCIOUSNESS OF GUILT.**

The conduct of the defendant, his general demeanor, his language, oral or written, and his mental and physical condition, attitude, and relation toward the crime, or his actions in the presence of those who discovered the crime, or who are engaged in discovering the perpetrator, are relevant; but the circumstances of the conduct of the accused must not be so remote in time or extend over so long a period as to create a strong probability that they were the outcome of other motives than a consciousness of guilt.

**10. WITNESSES ☞277(2) — DEFENDANT, ADMITTING HIDING OF DECEASED'S BODY, COULD BE CROSS-EXAMINED AS TO HIS MOTIVE.**

In murder prosecution, where defendant testified that he had aided in hiding the body of deceased after he had killed deceased, it was permissible for the state, on cross-examination, to ask the motive which prompted him in hiding the body.

**11. CRIMINAL LAW ☞785(16) — INSTRUCTION TO DISREGARD TESTIMONY OF WITNESS WHO HAD SWORN FALSELY HELD REVERSIBLE ERROR.**

In murder prosecution, instruction that jurors could disregard all the testimony of a witness who they believed had sworn "falsely," without requiring that such false testimony should have been willfully given, and that it related to material matters, held reversible error.

**12. WITNESSES ☞317(1)—FALSE TESTIMONY, ENTITLING DISREGARD OF ALL TESTIMONY, MUST BE MATERIAL AND WILLFULLY FALSE.**

To entitle a juror to disregard all the testimony of a witness whom he believes to have sworn falsely, it must appear that the testimony so given was willfully false and that it related to material matters.

### On Rehearing.

**13. CRIMINAL LAW ☞1056(2)—ORAL CHARGE REVIEWABLE, THOUGH NOT EXCEPTED TO.**

Under Acts 1915, p. 815, and Code 1907, § 6264, court's oral charge is reviewable, though no exceptions thereto were reserved.

**14. WITNESSES ☞270(2) — CROSS-EXAMINATION AS TO FAILURE OF WITNESS TO NOTIFY SHERIFF OF KILLING HELD ERROR.**

In murder prosecution, action of court in permitting cross-examination of defendant's witness as to the failure of such witness to notify the sheriff of the killing held prejudicial error.

Samford, J., dissenting in part.

Appeal from Circuit Court, Morgan County; F. Loyd Tate, Judge.

Will Montgomery was convicted of murder in the second degree, and he appeals. Reversed and remanded.

Sample & Kilpatrick, of Hartsells, for appellant.

Under section 6252 and Acts 1915, p. 815, the oral charge of the court, as well as the charges refused to the defendant, are not required to be shown by bill of exceptions, but become a part of the record.

(Counsel here marked do not appear in the trial of the cause, and no brief appears from counsel on the trial.)

J. Q. Smith, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The evidence of the character of the deceased is not relevant, until some element of self-defense is developed, and then cannot be shown by particular acts or matters. 177 Ala. 12, 59 South. 171; 197 Ala. 193, 72 South. 316. A proper predicate was laid for the admission of confession. 191 Ala. 7, 67 South. 1010. The fact that the defendant sought to hide the body was relevant. 166 Ala. 1, 52 South. 31.

On rehearing, counsel insist that no exception is reserved to the court's oral charge, and therefore it could not be considered. 140 La. 476, 73 South. 303.

BRICKEN, P. J. The defendant was indicted for the offense of murder in the first degree. He was tried and convicted of murder in the second degree, and from the judgment of conviction he appeals.

[1, 2] There are several rulings of the court insisted upon as error. There was no error in sustaining the objections of the state to questions propounded to witness Foreman, on cross-examination. Counsel for defendant insists that the evidence was competent for the purpose of establishing the violent, turbulent, and bloodthirsty character of deceased. The testimony sought to be adduced was that deceased, at the time of his death, was a fugitive from justice, and that on some former occasion, while the witness, who is the sheriff, was trying to arrest deceased, he attempted to shoot witness with a gun. Proof of specific acts or of isolated facts cannot be shown in order to establish character, and for this reason the objections were properly sustained. Jackson v. State, 177 Ala. 12, 59 South. 171; Donald v. State, 12 Ala. App. 61, 67 South. 624; Franklin v.

State, 29 Ala. 14. Moreover, at this juncture there was no evidence of self-defense, and in the absence of some evidence showing or tending to show that the defendant acted in self-defense, it is not permissible to offer proof of the violent, turbulent, and blood-thirsty character of deceased. Smith v. State, 197 Ala. 193, 72 South. 316.

[3] Over the objection of defendant, witness Lem Turney was permitted to testify to the confessions made by defendant a short time after the killing. A proper predicate had been laid for the introduction of this testimony, and the court did not err in overruling the general objections of the defendant to the questions, and for similar reasons there was no error in refusing to exclude this testimony from the jury. Wilson v. State, 191 Ala. 7, 67 South. 1010.

[4] Witness Lem Turney, on cross-examination and in response to questions propounded to him by defendant's counsel, testified to part of a conversation between witness, defendant, and one Ward, which conversation occurred at the house of defendant a short time after the killing of deceased. It was therefore permissible for the state, on redirect examination of this witness, to inquire as to the whole of this same conversation. The court permitted this to be done, and overruled the several objections interposed by defendant's counsel. The court did not err in its rulings in this connection. Maddox v. State, 159 Ala. 53, 48 South. 689.

[5] The motion of defendant to exclude all of the testimony offered by the state because of a variance between the allegations contained in the indictment and the proof, in that the defendant is charged with having killed "Red" Nelson, when the proof shows that the name of deceased was William Phillips, or Webster Nelson, was properly overruled, as the testimony of all the witnesses referred to the deceased as "Red" Nelson, and the undisputed evidence showed that the deceased was commonly known and always called by the name of "Red" Nelson, as contained in the indictment. Jones v. State, 181 Ala. 63, 61 South. 434.

[6, 7] The court did not err in allowing testimony to show that, in an hour or an hour and a half after the killing of deceased by defendant, he, together with two others, carried the body a distance of a half or three-fourths of a mile on a litter, constructed of gunny sacks or tow sacks and two sticks, and threw the body over a bluff into a sink in the mountains, and thereby concealed it. This testimony was not competent as a part of the res gestæ, but was competent upon the theory that the acts, declarations, and conduct of accused against interest are always admissible. It was competent, also, for the reason that affirmative proof had been offered of the commission by the defendant of the offense charged, and the tendency of this evidence was to show a desire or disposition upon the part of the accused to conceal the crime.

[8] Any act proving, or tending to prove, an effort or a desire on the part of the defendant to obliterate evidence of a crime, is always relevant, for from such facts, if unexplained, the jury may justly apprehend his mental condition, and may infer that they indicate a consciousness of guilt. Underhill, Crim. Ev. p. 563, § 323. Thus it appears that such testimony was also admissible upon the theory of facts showing a consciousness of guilt. Evidence upon this theory never depends on its contemporaneousness, connection with the crime that is charged, òr upon its being a part of the res gestæ. Facts showing or tending to show a consciousness of guilt are always permissible, though not connected with the res gestæ of the offense. Any statement or conduct of a person indicating a consciousness of guilt, where at the time or thereafter he is charged with or suspected of the crime, is admissible as a circumstance against him on his trial. Evidence of circumstances, which are part of a person's behavior subsequent to an event which it is alleged or suspected he is connected with or implicated in, are relevant, if the circumstances are such as would be natural and usual; the connection or implication having been shown to exist. Under a rule of evidence of this character testimony will be received to prove or disprove facts of circumstances which indicate a consciousness of guilt on the part of the accused, existing after the crime with which he is charged was committed.

[9] The conduct of the defendant, and general demeanor, his language, oral or written, and his mental and physical condition, attitude, and relations toward the crime, or his actions in the presence of those who discovered the crime, or who are engaged in discovering the perpetrator, are relevant. Jones v. State, 181 Ala. 63, 61 South. 434. Time between the commission of the crime and the incriminating or accusatory actions relied on to connect the accused therewith is often an important element. In other words, the circumstances of the conduct of the accused must not be so remote in time or extend over so long a period as to create a strong probability that they are the outcome of other motives than a consciousness of guilt. Underhill on Criminal Ev. p. 213, § 116; Smith v. State, 183 Ala. 10, 62 South. 864. In the case at bar, the above exception cannot, of course, apply. The circumstances of the defendant, together with his helpers, having hidden the body, were too closely connected with the commission of the offense to make the exception applicable here.

[10] The defendant having testified that he had aided in hiding the body of deceased, after he had killed deceased, it was permis-

sible for the state, on cross-examination, to ask the motive which prompted him in hiding the body. 23 L. R. A. (N. S.) 371, note (d); Williams v. State, 123 Ala. 39, 26 South. 521; Patterson v. State, 156 Ala. 62, 47 South. 52; Hurst v. State, 133 Ala. 96, 31 South. 933; Hays v. State, 155 Ala. 40, 46 South. 471; Richter v. State, 156 Ala. 127, 47 South. 163; Barber v. State, 11 Ala. App. 118, 65 South. 842; Linnehan v. State, 120 Ala. 293, 25 South. 6; Thomas v. State, 150 Ala. 31, 43 South. 371; Carwile v. State, 148 Ala. 576, 39 South. 222.

The cases of Ellis v. State, 105 Ala. 72, 17 South. 119, Smith v. State, 145 Ala. 17, 40 South. 957, Dean v. State, 100 Ala. 102, 14 South. 762, and Whizenant v. State, 71 Ala. 383, seem opposed to this view; but the expression in the Ellis Case was dictum, in Smith's Case the headnote is not sustained by the opinion, and the opinion in the Whizenant Case seems to have been based upon the common-law rule, before defendants were allowed to testify.

[11, 12] The court charged the jury:

"If you believe from the evidence that any witness has sworn falsely, you have the power and it is your privilege to disregard all the testimony of that witness."

In this there was error. Before a jury is authorized to disregard the testimony upon the principle of "falsus in uno, falsus in omnibus," it must appear that the testimony so given was willfully false and that it related to material matters; in other words, that the witness or witnesses have willfully sworn falsely, and that such willfully false swearing was in relation to a material matter in controversy. Smith v. State, 16 Ala. App. 79, 75 South. 627; Hamilton v. State, 147 Ala. 110, 41 South. 940; Prater v. State, 107 Ala. 26, 18 South. 238; McClellan v. State, 117 Ala. 140, 23 South. 653; Seawright v. State, 160 Ala. 33, 49 South. 325; Carpenter v. State, 193 Ala. 51, 69 South. 531; Keef v. State, 7 Ala. App. 15, 60 South. 963; Gillespie v. Hester, 160 Ala. 444, 49 South. 580.

For the error pointed out, the judgment of conviction is reversed, and the cause remanded.

Reversed and remanded.

## On Rehearing.

It is conceded, in fact it cannot be gainsaid, that there was manifest error in the oral charge of the court—error calculated to seriously and injuriously affect the substantial rights of the defendant. See cases cited in original opinion. It has also been held that "the harmful results arising from giving an erroneous charge are not cured by a correct statement of the law." Smith v. State, 15 Ala. App. 662, 74 South. 755.

It is now provided by statute (Acts 1915, p. 815) that the oral charge of the court must either be in writing or be taken down by the court reporter as it is delivered to the jury, and the clerk, in making the transcript or record for an appeal, must set out in the transcript this charge as a part of the record in the case, and neither this charge, nor any special charges requested, need be shown by the bill of exceptions. In all appeals in criminal cases no assignment of error or joinder therein is necessary, and it is the imperative duty of the appellate courts to consider all questions apparent on the record, or reserved by bill of exceptions, and must render such judgment as the law demands. Code 1907, § 6264.

The law demands that a person charged with crime shall be accorded a fair and impartial trial, a trial free from error the nature of which is calculated to injuriously affect the substantial rights of the defendant; that no person shall be deprived of life, liberty, or property, except by due process of law; that no person charged with crime shall be punished, except by virtue of a law which has been duly established and promulgated; and that right and justice shall be administered without sale, denial, or delay.

[13] May it not be said that the purpose of the statute, which designates and makes the oral charge of the court a part of the record, and that the intention of the Legislature in enacting this statute, was to insure to every person charged with crime the kind and character of trial above referred to, a trial free from hurtful error; that this statute was enacted as a safeguard to the legal rights of every person charged with crime, and that in order to do this the courts of last resort are authorized and required to see and determine that a trial of this character has been accorded? If as a condition precedent, in order to receive the benefit of this wise and humane provision, an exception must be reserved to the patent error of the trial court in stating the law, what, then, is to become of the unfortunate defendant, unversed in the law, inexperienced in matters of procedure, ignorant of his rights accorded by the Constitution and laws of the land in which he lives, to whom the very word "exception" would be unintelligible and meaningless? Must he be required to suffer the deprivation of liberty, or the taking away of his property, under and by virtue of the operation of a so-called law not in existence? In other words, must this infliction of penalty be permitted or countenanced under a mistaken conception of the law by a trial court? We think not, certainly not with the consent and approbation of the writer. Hundreds and thousands of the citizens in this state are charged with the commission of different offenses; in one class of offenses only is there provision made by law for counsel to represent defendants in criminal cases. Only in offenses punished capitally does the provi-

sion apply. No provision is made to supply counsel for a person charged with even so grievous an offense as that of murder in the second degree, notwithstanding a person convicted under this charge must be sentenced to serve any given number of years' imprisonment in the penitentiary not less than 10.

If, as a condition precedent, proper and legal exceptions must be reserved to all utterances of the trial court, whether such utterances are made from inadvertence or misconception as to the law, it would result that, in order to safeguard the legal rights of a person charged with crime, the accused must be financially able to employ competent counsel to see that his rights are not impaired, and that his liberty and property be thereby safeguarded, or that he must be competent and prepared himself to engage in a battle of wits, as it were, with the trial judge, thus being called upon to do the impossible, resulting, mayhap, in the wrongful conviction of many unfortunates, without even the right of review by the courts of last resort, whose paramount and imperative duty is to see that the law is properly, and not erroneously, administered by the lower courts of the state.

The effect of such provision, on the one hand, would open an avenue of oppression to a corrupt trial court, if such court be in existence, and, on the other hand, an ignorant or incompetent judge, or even a learned, though mistaken, judge, could without challenge engender untold suffering and unjust punishment, based upon judgments in their courts predicated upon statements made by the courts which are not the law, and these unlawful judgments must remain undisturbed because, forsooth, the incompetent counsel on the one hand, and the ignorant, unversed, friendless, and forlorn accused, upon the other hand, knew not that, in order to protect himself from being deprived of the constitutional rights accorded him as above enumerated, he must first perform the absolutely impossible, and must reserve at the right time a correct technical exception to any erroneous statements of law made by the court in its oral charge to the jury, and, if not done, is forever precluded from securing a review by the appellate courts of the erroneous statements of the law responsible for his conviction.

In expressing these views we are not unmindful of the several decisions which hold in line with the contention made by the Attorney General in the application for rehearing, and it may be here stated that we are in no sense assuming a prerogative not conferred upon the court. We are of the opinion that this exact question has never been passed upon since the passage and approval of the act creating and designating the oral charge of the court as a part of the record proper, and we welcome the opportunity thus afforded to present for review by the Supreme Court the concrete question here involved.

[14] It appears that the counsel now appearing for defendant on rehearing did not represent him upon his trial before the jury. We have examined their brief and argument on rehearing, and are of the opinion that the lower court also erred in overruling the objection of the defendant to questions propounded to witness Lum Ward. On cross-examination of this witness, over the objections of the defendant, the state was permitted to prove that this witness did not notify the sheriff of the killing. We are of the opinion that the objections to the question should have been sustained, as the defendant could not be bound by Ward's failure to notify the sheriff, even if Ward had been under any duty to do so and failed in this duty. The effect of this testimony was to prejudice the jury against the testimony of this witness, to which the defendant was entitled, free from illegal or undue implication.

Other questions presented by defendant on rehearing appear to be without merit. The application for rehearing is overruled.

Application overruled.

SAMFORD, J. (dissenting in part): I am constrained to differ from the other members of the court in the holding that in all criminal cases it is unnecessary for the defendant to reserve exceptions to the oral charge of the court in order that it may be reviewed on appeal. Since the case of Ex parte Knight, 61 Ala. 482, it has been the uniform ruling of the Supreme Court and Court of Appeals that a defendant could not, on appeal, complain of a portion of the oral charge of the court, unless before the jury retired an exception was reserved to that portion assigned as error and incorporated in the bill of exceptions. Bolling v. State, 78 Ala. 469; Sanford v. State, 8 Ala. App. 245, 62 South. 317; Barlew v. State, 5 Ala. App. 290, 57 South. 601; Smith v. State, 7 Ala. App. 55, 62 South. 301; Abrams v. State, 155 Ala. 105, 46 South. 464. The reason is obvious. If exception be taken, the error, if any, may be cured by a correction of the erroneous ruling. Johnson v. State, 29 Ala. 62, 65 Am. Dec. 383; Jones' Heirs v. Jones' Adm'r, 42 Ala. 218; Irvin v. State, 50 Ala. 181; Murphy v. State, 54 Ala. 178; Richardson v. State, 54 Ala. 158.

It is decided by the majority of this court that the act of the Legislature approved September 25, 1915 (Acts 1915, p. 815), has the effect of making the court's oral charge, when set out in the transcript, a part of the record in the case, within the contemplation of Code 1907, § 6243, which provides that it is not necessary to reserve an exception to any ruling or action of the court which is required to appeal of record, but in every such case an exception is presumed on ap-

peal. I do not so understand the act. Appeals are of statutory origin, and are governed entirely by the various statutes governing them. Nothing can become a part of the record on appeal, except that which is specifically provided for. In the act above referred to it is specifically provided that charges moved for by either party must be in writing, how they shall be given or refused, and when so given or refused they become a part of the record. Not so with the oral charge. True, it must be transcribed into the transcript and certified to the appellate court, that the appellate court may see what the trial judge instructed the jury, to the end that the written charges may be intelligently passed upon; but the oral charge is not a part of the record in the same sense as the organization of the court, the indictment, etc., and is not the subject of review by this court, unless specifically reserved and incorporated in the bill of exceptions, as required by Code 1907, § 6243.

I concur with the majority as to their other conclusions, but the error here complained of has been waived.